UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Joyce Elizabeth Arnette, | ) | C/A No. 5:20-cv-4336-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Kilolo Kijakazi, Acting Commissioner of | ) | |
| Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local

Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's

petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying

her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

pursuant to the Social Security Act ("the Act"). Having carefully considered the parties'

submissions and the applicable law, the court reverses and remands the Commissioner's decision

for further action for the reasons discussed herein.

I.      Relevant Background

        A.      Procedural History

This appeal concerns Plaintiff's April 15, 2019[2] applications for DIB and SSI benefits

under Title II and Title XVI of the Act, 42 U.S.C. §§ 401-433 in which she alleges a disability

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Kilolo Kijakazi for Andrew Saul as Defendant in this action.

[2] Although Plaintiff's applications are dated April 15, 2019, her protective filing date for both applications is April 8, 2019. Tr. 15.

onset date of January 26, 2019. Tr. 222-235. Plaintiff's applications were denied initially, Tr. 132-136, and upon reconsideration, Tr. 142-151, and in December 2019 Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 162-163. The administrative hearing was held on June 3, 2020. Tr. 33-58.[3] On June 24, 2020, the ALJ issued an unfavorable decision, finding Plaintiff not disabled within the meaning of the Act. Tr. 15-26. On July1, 2020, Plaintiff, through counsel, requested review of the ALJ's decision. Tr. 218-220. After granting Plaintiff's request for additional time, Tr. 7, the Appeals Council denied Plaintiff's request for review, Tr. 1-6. Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. Tr. 1. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on December 14, 2020. ECF No. 1.

B.     Plaintiff's Background

Born in August 1956, Plaintiff was 62 years old as of her alleged disability onset date of January 26, 2019, and 63 years old at the time of the administrative hearing. Tr. 229. In her April 26, 2019, Disability Report-Adult form Plaintiff indicated that she completed high school, attended special-education classes, and had not completed specialized job training or vocational school. Tr. 254. Plaintiff indicated that her past relevant work ("PRW") included folding towels and operating machinery for a linen company, performing housekeeping in hotels, doing laundry in a nursing center, and working as a laborer for a shipping company. Tr. 254. In her Disability Report Plaintiff indicated she stopped working on January 26, 2019, because of her conditions, which she listed as breast cancer (early state), severe arthritis, and back problems. Tr. 253. Plaintiff indicated that she was 4'8" tall, weighed 122 pounds, and her conditions caused her pain or other symptoms. *Id.* In a Disability Report-Appeal dated October 16, 2019, Plaintiff indicated her reported medical

---

[3] The hearing was held telephonically because the "extraordinary circumstance" of the COVID-19 pandemic made in-person hearings and video teleconferencing unavailable at that time. Tr. 15.

conditions had changed. Tr. 285. However, Plaintiff indicates the change occurred on January 26,

2019, which is her alleged onset date and the date she completed the original Disability Report-

Adult. *Id.* She lists the following "symptoms" and "limitations" in the space provided to describe

changes in her medical conditions:

> Symptoms: coughing spells; difficulty swallowing; dizziness; fatigue; frequent
> urination; lack of balance; lack of grip strength; lack of stamina; lightheadedness;
> limited range of motion; muscle spasms; numbness; pain; shortness of breath;
> stiffness; swelling; tightness in chest; tingling; tremors/shakiness; trouble
> sleeping/insomnia; weakness; headaches; vision problems; hearing problems;
> anxiety; depression. Limitations: Bending; kneeling; lifting; reaching; sitting;
> squatting; stair climbing; standing; using hands; walking; following instructions;
> understanding; concentration; memory loss.

Tr. 285. Plaintiff indicated she did not have any new physical or mental conditions since the time

she had last told the Agency about her conditions. Tr. 285. In a second Disability Report-Appeal

dated December 31, 2019, Plaintiff indicated there had been no changes to her medical condition

and there were no new physical or medical conditions to report. Tr. 294.

C.    The Administrative Proceedings

Plaintiff's administrative hearing was held on June 3, 2020 before ALJ Linda Diane Taylor

in Charleston, South Carolina, under Covid-19 telephonic hearing procedures. Tr. 35. Plaintiff

appeared with counsel and testified; Vocational Expert ("VE") Tonetta Watson-Coleman also

appeared and testified. *Id.* After exhibits were received into the record and Plaintiff's counsel made

a brief opening statement Plaintiff was sworn in. Tr. 36-37.

1.    Plaintiff's Testimony

In response to questions from the ALJ Plaintiff said she was 63 years old, had a driver's

license, and drove "once or twice a day [to] go to the store or something, and go to the doctor." Tr.

37-38. Plaintiff lives with her adult son who is sick and does not work outside the home. Tr. 38.

Plaintiff said she had completed the 12th grade and had not worked since January 26, 2019. Tr.

38. Plaintiff described her past work as a housekeeper at Holiday Inn and Best Building and as a machine operator with Carolina Linen. Tr. 38-39.

When asked why she believed she was disabled and unable to work, Plaintiff indicated she could stand up for only "maybe 30 minutes to an hour and it hurts me in the back and in my hips." Tr. 39. She indicated she could not sweep or mop because it "hurts so bad[,]" and requires her to go lie down for a few hours before she can get back up. Tr. 39. The ALJ asked Plaintiff to discuss the issues with her back and neck. Plaintiff said it hurt in her neck as well, but pain was "mostly down in [her] hips and [her] back." Tr. 39. Plaintiff said it hurts down there when she tries to walk; her knees "give away on [her] now" when she tries to climb stairs. She explains that she cannot climb stairs anymore and is trying to get a ramp built for her to use. Tr. 39. Plaintiff said she had received no treatment for her back or hips because she did not have money or insurance to do so. Tr. 40.

Plaintiff said she was not taking pain medicine at that time other than arthritis medicine. Tr. 40. Plaintiff said she could not tell the ALJ the names of the medications she was taking; however, she described them as medications for arthritis, "stuff for [her] neck," seizure medicine, thyroid medicine, cancer medicine, and medicine for anxiety. Tr. 40. The ALJ asked whether the medications Plaintiff took were helpful in controlling her symptoms. Tr. 40. Plaintiff indicated that they did "pretty good except for the arthritis." Tr. 41. Plaintiff explained the arthritis medication was not strong enough. Tr. 41. Plaintiff said she did not have side effects from her medication other than having restless legs. Tr. 41. Plaintiff said she tried to walk down a dirt road at her house once or twice a week for about five or ten minutes. Tr. 41-42. She noted that her back hurt sometimes when she tried to walk. Tr. 41.

Plaintiff said she had not had issues lately related to her 2019 breast-cancer diagnosis, lumpectomy, and radiation. Tr. 41. Plaintiff said she had scars from the cancer surgery. Tr. 41.

4

Plaintiff then described a surgery she had about eight years ago when she broke her right wrist. Tr. 42-43. Plaintiff said she had broken her hand, had surgery on her wrist that included screws in her arm, and that she now had arthritis in that hand such that she cannot use it to write with. Tr. 42-43. Plaintiff said she tried to do exercises to keep her wrist flexible and that she took 15 milligrams of Meloxicam for the arthritis. Tr. 43. Plaintiff again noted the medication was not helping. Tr. 43. Plaintiff noted she was right-handed. Tr. 44.

Plaintiff noted she took her anxiety medication when she needed it, sometimes once or twice per day. Tr. 44. Plaintiff said there had been no change to her anxiety medication within the past year, and she indicated she was not receiving mental health counseling. Tr. 44-45.

The ALJ asked Plaintiff to describe a normal day. Plaintiff said she mostly stayed in bed and watched TV, although she sometimes tried to sweep and mop, but she was unable to do that without her back hurting badly. Tr. 45. Plaintiff said she could not wash dishes. Tr. 45. Plaintiff said she did not do much cooking other than to fix sandwiches or cook things in the microwave. Tr. 45. Plaintiff said she could clean the kitchen after she finished but noted there was never a big mess. Tr. 45. Plaintiff said she laundered her own clothes, doing small loads, and completing the process a little at a time. Tr. 45-46.

Plaintiff said she typically watched TV all day long. Tr. 46. Plaintiff said she liked to fish and she enjoyed shopping and lunching with her sister. Tr. 46. She indicated, though, she was not able to go with her sister because she could not walk. Tr. 46. Plaintiff indicated she had not been fishing in about two years and when she did go she had to sit down to fish. Tr. 46.

Plaintiff estimated she could walk and stand for about 30 minutes at a time. Tr. 47. Plaintiff said she could probably sit for about 30 minutes, as well, but noted that her back was hurting during the hearing. Tr. 47.

Plaintiff's counsel began questioning Plaintiff, and she explained she had to lie down about 50% of an eight-hour day because of back pain. Tr. 47-48. Plaintiff described the pain she had when having to sit, stand, or walk too long as being "worse than a dull pain," affecting her back, neck, and sometimes her legs. Tr. 48. In response to a question from counsel Plaintiff indicated she sometimes had pain that began in her shoulders. Tr. 48. Plaintiff said that, besides her spine, her knees, ankles, elbows, wrists, and shoulders had pain because of arthritis. Tr. 48-49.

Plaintiff said she had done radiation therapy for her breast cancer every day between March and April 2019. Tr. 49. She said that, as far as she knew, her cancer was in remission. Tr. 49.

Plaintiff said she got headaches three or four times per week and that they typically lasted three to four hours. Tr. 49-50. Plaintiff said she dealt with the headaches by lying down in a dark room with her eyes closed. Tr. 50. The ALJ asked Plaintiff if she had medication for the headaches, and Plaintiff indicated she had Topamax, which she took twice a day. Plaintiff said she still had headaches even with that medication. Tr. 50. Plaintiff said that the headaches were not as bad as they used to be. Tr. 50-51.

Counsel resumed the questioning and asked if Plaintiff also took Ibuprofen for pain and headaches. Tr. 51. Plaintiff said she did. Tr. 51. Plaintiff indicated the Topomax was intended to help keep her from getting dizzy. Tr. 51.

Plaintiff said she had not worked since January 2019 and that, since then, she did not have enough energy to do anything. Tr. 52. Plaintiff said the medication for "cancer and all" pulled her down and left her without energy. Tr. 52. Plaintiff also indicated the radiation therapy made her tired; she further indicated she continued to feel tired after completing the radiation therapy. Tr. 52. Plaintiff said the radiation and cancer treatment had impacted her short-term memory, as well. Tr. 53.

The ALJ had no further questions of Plaintiff. Tr. 53.

2.    VE Testimony

After being sworn in, VE Watson-Coleman testified and described Plaintiff's PRW as Housekeeper, SVP 2, unskilled, strength level light, DOT 323.687-014 and Linen Machine Operator, SVP 2, unskilled, light, DOT 369.686-010. Tr. 54. The ALJ asked the VE to assume a person of Plaintiff's age, education, and experience to perform the full range of light exertion and further limited by the following:

> Frequent climbing stairs and ramps. Occasionally climbing ladders, ropes, and scaffolds. Frequently stooping, kneeling, crouching, crawling. Frequently reaching overhead with the right upper extremity. Avoiding concentrated exposure to hazards, extreme cold and vibration.

Tr. 54. Characterizing the above as "hypothetical one," the ALJ asked the VE whether such an individual could perform either of Plaintiff's past work. Tr. 54. The VE testified that the individual could perform both of Plaintiff's prior jobs as well as some others in the national economy. Tr. 54. The VE described those other jobs as Merchandise Marker, SVP 2, unskilled, light, DOT 209.587-034, approximately 309,000 jobs available; Office Helper, SVP 2, unskilled, light, DOT 239.567-010, approximately 45,000 jobs; Office Router, SVP 2, unskilled, light, DOT 222-587-038, approximately 53,000 jobs. Tr. 54-55.

For hypothetical question number two, the ALJ asked the VE whether past work would be available using the "same assumptions as hypothetical number one but reducing the exertional level to sedentary." Tr. 55. The VE indicated that past work would be eliminated. Tr. 55.

The VE indicated her testimony was consistent with the Dictionary of Occupational Titles and its companion publications. Tr. 55. The VE continued by explaining that her opinion regarding the use of one extremity versus the other and overhead reaching is based upon her "professional experience, education, and training as the DOT does not address those issues." Tr. 55.

Plaintiff's counsel then asked the VE whether past work would be eliminated if hypothetical number one were changed such that all of the exertional restrictions described were limited to occasional as opposed to frequent. Tr. 55-56. The VE indicated past work would be eliminated and confirmed that there would be no transferable skills that could transfer to a sedentary level. Tr. 56. Counsel also asked the VE how much time a person could take off even from a sedentary, unskilled job above the regularly scheduled breaks in the eight-hour period. Tr. 56. The VE indicated that, based on her experience, "up to and including 10% of off task time is usually tolerated as long as the worker is still able to complete the expected work output for the day. Anything greater than that, they would not be able to maintain employment." Tr. 56. The VE indicated an individual who could only work for five hours of sustained activity in an eight-hour day would not be able to maintain employment. Tr. 56-57.

There being no further questions, the hearing was closed. Tr. 57.

II.    Discussion

A.    The ALJ's Findings

In her June 24, 2020 decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2022.

2.    The claimant has not engaged in substantial gainful activity since January 26, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe combination of impairments: osteoarthritis (OA) and mild degenerative disc disease (DDD) of the cervical spine (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that
        the claimant has the residual functional capacity to perform less than the
        full range of light work [footnote 3] as defined in 20 CFR 404.1567(b) and
        416.967(b) except that [s]he can frequently climb stairs and ramps, as well
        as  frequently stoop, kneel crouch, and crawl. The claimant can frequently
        reach overhead with her right upper extremity. She can occasionally climb
        ladders, ropes, and scaffolds. The claimant must avoid concentrated
        exposure to hazards, extreme cold, and vibration.

        [footnote 3] Light work involves lifting no more than 20 pounds at a time
        with frequent lifting or carrying of objects weighing up to 10 pounds, as
        well as sitting, standing, or walking for 6 hours each in an 8-hour workday.

6.      The claimant is capable of performing past relevant work as a housekeeper
        and as a linen machine operator. This work does not require the performance
        of work-related activities precluded by the claimant's residual functional
        capacity (20 CFR 404.1565 and 416.965).

7.      The claimant has not been under a disability, as defined in the Social
        Security Act, from January 26, 2019, through the date of this decision (20
        CFR 404.1520(g) and 416.920(g)).

Tr. 17-21, 25.

B.      Legal Framework

        1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for

benefits, who are not of retirement age, who properly apply, and who are "under a disability,"

defined as:

        inability to engage in any substantial gainful activity by reason of any medically
        determinable physical or mental impairment which can be expected to result in
        death or which has lasted or can be expected to last for a continuous period of not
        less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

        To facilitate a uniform and efficient processing of disability claims, regulations

promulgated under the Act have reduced the statutory definition of disability to a series of five

sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing

9

considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b), § 416.920 (a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing the inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii), § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526, § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146 n.5 (regarding burdens of proof).

2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.     Analysis

Plaintiff alleges the ALJ erred by (1) failing to find that her lumbar DDD and shoulder degenerative joint disease ("DJD") were severe impairments at step two of the sequential process, or, relatedly, whether it was error not to consider those impairments in the Listing analysis; (2) failing to account for all of her supported functional-related limitations in determining her RFC; (3) failing to properly consider the opinion of evaluating physician Morton Meltzer, M.D.; and (4) failing to properly consider Plaintiff's hearing testimony. Pl. Br., ECF No. 18: Reply, ECF No. 21. The Commissioner argues that substantial evidence supports the ALJ's determination. Def. Br., ECF No. 20. The court will discuss each argument in turn, consolidating the analyses of related arguments where appropriate.

1.     Step two analysis: severe impairments

At step two of the sequential analysis, the ALJ found Plaintiff had the severe impairments of OA and DDD of the cervical spine. Tr. 18. The ALJ found several other medically determinable impairments—including gastroesophageal reflux disease, hypothyroidism, status post lumpectomy of right breast ductal carcinoma with radiation completed in April 2019, depression, anxiety, and migraine headache—but found them to be nonsevere because they were well-controlled or placed no limitation on work-related activities. Tr. 18. The ALJ did not separately

reference lumbar DDD or shoulder DJD as being either severe or nonsevere impairments in the step two portion of the decision.

Plaintiff argues the ALJ's failure to indicate whether she found Plaintiff's lumbar DDD and shoulder DJD to be severe or non-severe at Step Two of the disability analysis, coupled with her failure to discuss those impairments and explain how they did (or did not) impact her RFC, amounted to prejudicial error. Pl.'s Br. 14-17, Reply 1-2. Focusing on Plaintiff's testimony at the administrative hearing that she had the most trouble "down in her hips and back" and evidence regarding same, Plaintiff claims the ALJ erred in not determining that her lumbar DDD was a severe impairment. Pl. Br. 15-16 (citing Tr. 39).

The Commissioner argues that despite not referencing Plaintiff's lumbar DDD or shoulder DJD at step two, the ALJ "found in [Plaintiff's] favor at this step and then went on to consider all of Plaintiff's impairments—including Plaintiff's lumbar spine and shoulder problems—in formulating the RFC." Def. Br. 5. The Commissioner submits that in other portions of the decision the ALJ referenced objective imaging of Plaintiff's spine and shoulder, as well as Plaintiff's testimony about those areas. Def. Br. 5 (citing Tr. 22-23). The Commissioner further asserts that any error by the ALJ is harmless as she continued beyond step two, leaving "no reason for remand even if the Court were to agree that the ALJ should have found these additional impairments severe at step two." Def. Mem. 6.

Step Two is a threshold determination of whether a claimant has a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment "must result from anatomical, physiological, or psychological abnormalities which

13

can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms[.]" 20 C.F.R. §§ 404.1508, 416.908. It is the claimant's burden to prove that he suffers from a medically severe impairment. *Bowen v. Yuckert*, 482 U.S. at 146 n.5.

Here, the court finds that the ALJ's failure to list lumbar DDD and shoulder DJD as severe impairments may be considered harmless error. "As long as a claim is not denied at step two, it is generally unnecessary for the ALJ to have specifically found any additional alleged impairment to be severe." *Bryant v. Comm'r, Soc. Sec. Admin.*, No. 2:15-CV-4786-RMG-MGB, 2017 WL 394500, at *9 (D.S.C. Jan. 10, 2017), *report and recommendation adopted sub nom. Bryant v. Colvin*, No. CV 2:15-4786-RMG, 2017 WL 384302 (D.S.C. Jan. 25, 2017)). *See also Martinez v. Astrue*, No. CA 1:11-850-CMC-SVH, 2012 WL 3580675, at *10 (D.S.C. July 30, 2012), *report and recommendation adopted*, No. CA 1:11-850-CMC-SVH, 2012 WL 3582799 (D.S.C. Aug. 17, 2012) ("A finding of a single severe impairment at step two of the sequential evaluation is enough to ensure that the factfinder will progress to step three."). In other words, "[a]s long at the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." *McClain v. Colvin*, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted).

Plaintiff's first allegation of error is dismissed.[5] The court emphasizes, however, the finding that Plaintiff's first allegation of error is harmless is based on the fact that the ALJ

---

[5] Further, to the extent Plaintiff's first allegation also ascribes error to the Listing analysis, Pl. Br. 16-17, Reply 1-2, the court finds no need for remand. While Plaintiff briefly submits the ALJ should have analyzed whether Plaintiff's lumbar DDD and shoulder DJD meets or medically

14

proceeded beyond step two of the sequential analysis and is not predicated on the portion of the Commissioner's argument that the ALJ's RFC regarding impairments and limitations related to Plaintiff's lumbar and shoulder issues is supported by substantial evidence. "An ALJ's erroneous failure to assess an impairment as severe at step two may be deemed harmless if she considers the functional effects of the impairment in assessing the claimant's RFC." *Williams v. Berryhill*, No. CV 1:17-1077-TLW-SVH, 2018 WL 4443151, at *12 (D.S.C. Jan. 29, 2018), *report and recommendation adopted,* No. 1:17-CV-1077-TLW, 2018 WL 4405325 (D.S.C. Sept. 17, 2018). The analysis continues.

2.    The ALJ's RFC Assessment

Plaintiff's next allegation of error relates to the ALJ's RFC assessment. The ALJ found Plaintiff had the RFC to perform jobs at the light exertional level with the following limitations: frequent climbing of stairs and ramps; frequent stooping, kneeling, crouching, and crawling; frequent overhead reaching with right upper extremity; occasional climbing of ladders, ropes, and scaffolds; and avoiding concentrated exposure to hazards, extreme cold, and vibrations. Tr. 20-21. Plaintiff submits this RFC did not account for issues she has with sitting, standing, walking, climbing stairs, using her right hand, working for sustained periods, and handling more than simple work. Pl. Br. 18-19.[6] Importantly for this appeal, Plaintiff argues the ALJ's decision included no analysis of why these limitations—particularly those related to lumbar DDD, right shoulder DJD, issues with traumatic arthritis in her right hand, and fatigue (related to prior radiation therapy)— are unworthy of being taken into account in formulating Plaintiff's RFC. Reply 4-5 (citing *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015); *Hall v. Harris*, 658 F.2d 260, 266 (4th Cir. 1981)).

---

equals the then-applicable listings, Plaintiff offers no argument or evidence to establish that she actually meets or equals any potentially applicable listings.

[6] To the extent the RFC-related argument focuses on Plaintiff's own testimony much of her separate argument regarding subjective complaints is subsumed by this argument.

Ultimately, Plaintiff argues that a "fair RFC assessment would have limited [her] to sedentary work with restrictions for the use of her dominant right arm and wrist." Pl. Br. 20. Such an RFC, she notes, would lead to a finding that Plaintiff was disabled based on the Medical-Vocational Guidelines (the "Grids"). *Id.*

The Commissioner submits Plaintiff's RFC is supported by substantial evidence, noting the ALJ's discussion of medical records, Plaintiff's testimony, and Plaintiff's conservative treatment in evaluating what Plaintiff would be able to do. Def. Br. 5-8.

In her decision, the ALJ must build a "logical bridge" from the evidence to her conclusion. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). The ALJ must consider all of Plaintiff's physical and mental impairments to determine how they affect her ability to work. *Id.* at 188. An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (emphasis in original). At the administrative hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546, 416.946. An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. §§ 404.1545(a)(3) and (4), 416.945(a)(3) and (4). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184 at *7. The ALJ must discuss the claimant's ability to "perform sustained work activities in an ordinary work setting" on a regular work schedule. *Id.* Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* The RFC must

include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts such as laboratory findings and non-medical evidence like daily activities and observations. *Mascio*, 780 F.3d at 636.

In determining that Plaintiff had the RFC to perform light work with certain additional limitations, the ALJ stated that in making her RFC determination, she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." Tr. 21. The ALJ then discussed Plaintiff's hearing testimony, the medical evidence, including the medical source opinions of state agency examiners and consulting examiners Morton Meltzer, M.D. (mental) and Jadene Lowry, M.D. (physical). Tr. 21-24. The ALJ's recitation of Plaintiff's testimony regarding her functional ability and activities of daily living ("ADLs") included the following:

- Plaintiff lives with her adult son, and she said she could drive and would drive to the store or doctors appointments once or twice a day.
- Plaintiff indicated she was able to stand for 30-60 minutes but not more because her back and hips hurt. She indicated she could not sweep or mop and sometimes would lie down during the day. Plaintiff indicated she could walk and sit for 30 minutes.
- Plaintiff said her back and hips hurt when walking or climbing stairs. She noted she had had no medical treatment for her back or hips and was not taking pain medications.
- Plaintiff said she took medications for arthritis, seizure, thyroid, cancer, and anxiety and that medications controlled her symptoms "'pretty good.'" Plaintiff noted, though, that she needed a higher dosage of medication for arthritis and restless leg syndrome.
- Plaintiff indicated she had no ongoing problems related to her history of breast cancer and radiation.[7]
- Plaintiff noted her issues with her right arm related to arthritis and not her wrist surgery from seven or eight years ago; Plaintiff indicated she was right-handed and unable to write her name with her right hand. Plaintiff noted she had begun taking Meloxicam[8] four or five months prior.
- Plaintiff indicated medication sometimes helped with her anxiety and noted she had not participated in mental health counseling.

---

[7] The court notes Plaintiff's hearing testimony in which she indicated she had ongoing fatigue that she attributed to the radiation therapy she had received. Tr. 52.

[8] Meloxicam is a nonsteroidal anti-inflammatory drug used to treat arthritis pain and swelling. https://www.webmd.com/drugs/2/drug-911/meloxicam-oral/details (last visited March 11, 2022).

- Plaintiff said she takes medication for headaches but still has headaches that require her to lie down in a dark room; Plaintiff's doctor advised there was nothing that could be done for the headaches.
- Plaintiff indicated she spent most of her day in bed watching television; she said sweeping and mopping made her back hurt and washing dishes was painful. Plaintiff said she could fix herself simple meals and clean up. She was able to do small loads of laundry. She last went fishing two years prior. Plaintiff indicated she went shopping with her sister.[9]

Tr. 21-22.

The ALJ indicated she found Plaintiff's medically determinable impairments could cause some of the symptoms but found Plaintiff's statements concerning the "intensity, persistence and limiting effects of these symptoms not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 22. The ALJ then cited to medical records and summarized Plaintiff's relevant medical history, including the following:

- Related to breast cancer treatment:
    - January 28, 2019 right breast lumpectomy and sentinel node localization due to ductal carcinoma in-situ, followed by radiation therapy, which Plaintiff was told could case fatigue (citing exs. 1F, 2F, 3F).
    - Records from April and May 2019 indicated Plaintiff had done well with radiation and was overall improving (citing ex. 11F).
    - July 18, 2019 oncology records again indicated Plaintiff was improving overall. She had no lymphedema. She reported a few hot flashes and generalized achiness. She was taking Tamoxifen (citing ex. 11F).
    - Plaintiff's September 12, 2019 mammogram indicated no evidence of malignancy (citing ex. 12F).
- Treatment at Little River Medical Clinic:
    - Plaintiff went to Little River Medical Clinic every three months for medication refills. She had been diagnosed with primary generalized osteoarthritis and backache. She was seen there on April 2, 2019, with complaints of pain between her shoulder blades. At the time, she was still receiving radiation therapy. Her physical examination was unremarkable (citing ex. 4F, 13F).
    - Plaintiff was seen at Little River Medical Clinic in June 2019 for complaints of anxiety and arthritis pain. Plaintiff indicated bilateral pain in legs, neck, and shoulders. She was prescribed Lexapro (citing ex. 13F).[10] When she returned on November 18, 2019 she denied anxiety (citing ex. 14F).

---

[9] The court notes that Plaintiff testified that she is no longer able to go shopping and out to lunch with her sister because of her issues with walking. Tr. 46.

[10] Lexapro (escitalopram) used to treat depression and anxiety. It works by helping to restore the balance of a certain natural substance (serotonin) in the brain. https://www.webmd.com/drugs/2/drug-63990/lexapro-oral/details (last viewed March 14, 2022).

- o Little River Medical Clinic records from February 18, 2020 indicate Plaintiff had been out of medications for some time because of lack of funds. Plaintiff was seeking medication assistance. Her physical examination on this date was unremarkable (citing ex. 14F).
- X-rays:
  - o A July 12, 2019 x-ray of Plaintiff's lumbar spine demonstrated "multilevel disc space narrowing with osteophytes. There was spondylosis without bone lesion or fracture." (citing ex. 14F).
  - o An April 8, 2020 x-ray of Plaintiff's left shoulder demonstrated "moderate degenerative change in the right acromioclavicular joint and no acute bony abnormality." (citing ex. 14F).
  - o An April 8, 2020 x-ray of Plaintiff's lumbar spine "revealed mild intervertebral disc space down at the L5-S1 level" (citing ex. 14F).[11]

Tr. 22-23.

The ALJ then stated the following regarding Plaintiff's reported ADLs:

The claimant's activities of daily living are inconsistent with her allegations of such significant functional limitations, but are fully consistent with the residual functional capacity described above. The evidence of record indicates that despite the claimant's complaints and allegations, she has admitted that she was able to live independently, tend to her personal hygiene, take care of her dog, cook, take her medications independently, drive, clean, wash dishes, shop, wash laundry, watch television, go out to eat, visit with friends, and read, activities, which generally reveal functioning at a greater level than alleged (Exhibits 3E, 6F). Of note, her descriptions of her daily activities are representative of a fairly active lifestyle and are not indicative of a significant restriction of activities or constriction of interests.

Tr. 23.

The ALJ then reviewed opinion evidence. Tr. 24-25. The court focuses on the ALJ's consideration of opinions as to physical impairments, particularly Plaintiff's complaints related to her lumbar spine and shoulder.[12] Without any real discussion of what their opinions included, the ALJ determined that opinions of the State Agency consultants were "persuasive" other than as to

---

[11] The ALJ referenced an April 9, 2019 x-ray of Plaintiff's cervical spine in connection with discussing the consulting assessment of Dr. Lowry. Tr. 25 (noting the cervical-spine x-ray showed "mild degenerative disc disease changes, moderate facet arthrosis and unconvertible apophysis spondylosis").

[12] The ALJ agreed with the State Agency consultants' opinions that Plaintiff had no severe mental impairments. Tr. 23 (citing exs. 1, 2, 5, and 6A). The ALJ discussed the opinion of examining, consulting expert Morton Meltzer, M.D., but determined his conclusions were not persuasive. Tr. 23-24 (citing ex. 6F).

a handling limitation for her right hand, which was "not supported by adverse objective physical findings." Tr. 23 (referencing opinions of State Agency consultants, rendered August 27, 2019 and December 26, 2019 and found at Tr. 60-89, 92-125). The ALJ noted Plaintiff had no orthopedic records.

The ALJ considered the July 12, 2019 consultative examination performed by Jadene Lowry, M.D. Tr. 24-25, *see* Tr. 500-506. The ALJ set out some of the information Dr. Lowry provided in her report, including Plaintiff's report of "constant mid-to-low back pain" that "radiated down into her legs," and Plaintiff's indication that she had not had x-rays,[13] physical therapy, chiropractic treatment, or surgery. Tr. 24. Plaintiff indicated to Dr. Lowry that she had joint pain in her arms, shoulders, neck, legs, knees, and wrists and that she had never seen a rheumatologist. Tr. 24; *see* Tr. 501. The ALJ went on to describe Plaintiff's report to Dr. Lowry that she could sit for 20 minutes, stand for 10-15 minutes, walk less than ½ a block, and climb 5-6 stairs and steps. Tr. 24. The ALJ then noted Dr. Lowry's functional findings: Plaintiff had decreased range of motion in her cervical and thoracolumbar spine, some reduced range of motion in her shoulders bilaterally, and some reduced flexion in both knees. Tr. 24, *see* Tr. 500. Plaintiff had full strength in her extremities and did not use an assistive device for ambulating. Her gait was steady, and she was able to get off of the exam table unassisted. Tr. 24-25, *see* Tr. 505. The ALJ noted Dr. Lowry's reference of an April 9, 2019 x-ray of Plaintiff's cervical spine, which showed mild DDD changes, moderate facet arthrosis and unconvertible apophysis spondylosis. Tr. 25; *see* Tr. 505. The ALJ ended her discussion of Dr. Lowry's consultative examination by noting Dr. Lowry had identified no work-related limitations for Plaintiff and that Plaintiff's physical

---

[13] As noted within the record includes several x-rays, some of which had been taken at time of Plaintiff's examination by Dr. Lowry.

examination had been generally unremarkable. Tr. 25.[14]

The ALJ then summarized her support for the RFC by noting Plaintiff's "conservative treatment for her DDD and OA[,]" generally unremarkable physical examinations, no recurrence of her breast cancer, her ability to live independently, and the lack of mental-health-care treatment. Tr. 25. The ALJ concluded that a finding that Plaintiff "was uncapable of all work activity is not supported by the evidence of record as a whole, for the reasons explained above." Tr. 25.

The court agrees with Plaintiff that the ALJ did not adequately discuss what Plaintiff indicated numerous times was her biggest impediment to working—her problems with her lumbar spine pain that in turn radiated down her legs and caused issues with prolonged walking, sitting, standing, and stair-climbing. Certainly, the ALJ went into some detail regarding Plaintiff's complaints, referencing some medical treatment notes, and listing Plaintiff's medical tests, including the x-rays of her lumbar spine, shoulder, and cervical spine. However, particularly regarding Plaintiff's lumbar spine, merely noting that such x-rays were taken while including no detailed discussion of them or what they meant to Plaintiff's functional abilities is not sufficient to permit the court's meaningful review.

Significantly, the report of consulting expert Dr. Lowry on which the ALJ focused referenced only the cervical spine x-ray of April 9, 2019. Dr. Lowry apparently did not have access to the July 12, 2019 lumbar x-ray (taken the same day of the examination); she plainly could not have had access to the April 8, 2020 lumbar or shoulder x-ray. While not noted by the ALJ, the treatment records of the ordering provider at Little River Medical Center noted the completed lumbar spine imaging that had been ordered for April 7, 2020, was "abnormal" and would be

---

[14] In addition to the above, the ALJ discussed the June 29, 2019 mental status examination by Dr. Meltzer, finding his opinions were not persuasive, citing to Plaintiff's ability to live independently and her failure to seek mental health care or counseling. Tr. 24.

discussed with Plaintiff at her May 18, 2020 follow-up appointment. Plaintiff was assessed with lumbago. Tr. 611-612.[15]

Review of the records of Little River Medical Center reveals that Plaintiff had regularly reported to providers there that she had pain in her back that would spread to her legs when walking. *See, e.g.,* Tr. 495 (June 26, 2019 visit), Tr. 612 (April 7, 2020 visit in which Plaintiff indicated she had "pain in lower back, shoulders, and hips," and that the pain became "worse with certain activities such as sweeping or mopping"). Additionally, although not noted by the ALJ, Dr. Lowry's physical examination of Plaintiff's musculoskeletal system included a notation that Plaintiff had "tenderness to palpation of the calf, posterior knees and the lower lumbar spine." Tr. 505.

The ALJ accurately stated that Dr. Lowry did not identify any work-related limitations and her examination of Plaintiff was "generally unremarkable." While this is true as far as it goes, the ALJ failed to note that Dr. Lowry's "Impression" noted Plaintiff's stated problems with sitting, standing, walking, and climbing secondary to neck and back pain, and she recommended these "could be further evaluated with imaging." Tr. 505. Indeed, the record contains additional imaging of the lumbar spine and the shoulder—imaging Dr. Lowry believed could be informative but that she did not have at the time of her report. Dr. Lowry also indicated that follow-up with an orthopedist or rheumatologist might be considered. Tr. 505. There is no indication that any follow-up ever took place. Plaintiff noted at the hearing that she had not received specific treatment for her back or hips because she did not have money or insurance to do so. Tr. 40.

The court agrees with Plaintiff that the ALJ did not provide sufficient analysis of Plaintiff's complaints regarding issues with her lumbar area, as well as its impact on walking in making her

---

[15] The latest available record from Little River Medical Clinic is from April 2020.

RFC assessment. The RFC found Plaintiff could perform light work with additional limitations. Light work, by definition, requires that a claimant be able to stand, sit, or walk for six hours out of an eight-hour day. The RFC found Plaintiff could climb stairs and ramps "frequently," which also would be up to six hours per day. Nowhere in her decision does the ALJ specifically discuss Plaintiff's allegations of limitations in walking, sitting, standing, and stair-climbing in the context of Plaintiff's medically reported issues with her back. Although the ALJ generally cites to x-rays of the lumbar spine, she cites to no real medical analysis of them, including the notation by Plaintiff's primary care provider that the 2020 lumbar-spine x-ray was "abnormal." Tr. 611. The only medical evidence concerning Plaintiff's physical abilities indicated additional information would be helpful in assessing Plaintiff's stated problems with "sitting, standing, walking, and climbing." Because the ALJ did not reconcile this evidence and did not specifically discuss these issues, the court finds her RFC assessment does not reflect consideration of the entire record or reconcile contradictory evidence regarding Plaintiff's ability to perform relevant functions. *See* 20 C.F.R. § 404.1545(a) and § 416.945(a); *Mascio*, 780 F.3d at 636. Accordingly, remand is necessary. *See Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011) ("Assessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance.").

Because the court is remanding this matter for the ALJ to consider all the evidence in the record concerning the impact Plaintiff's lumbar DDD has on Plaintiff's RFC, the ALJ should also use this opportunity to re-evaluate other issues raised by Plaintiff, including the consideration of DJD of the shoulder, fatigue resulting from radiation therapy, headaches, as well as the consideration given to the opinion of Dr. Metzler and to Plaintiff's subjective symptomology, including Plaintiff's description of her ADLs and how they do—or do not—support an RFC that requires significant walking, standing, sitting, and stair-climbing.

III.     Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine if the Commissioner's decision is supported by substantial evidence. The court hereby reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and remands the matter to the Commissioner for further proceedings consistent with this order.

IT IS SO ORDERED.

March 18, 2022                                         Kaymani D. West
Florence, South Carolina                      United States Magistrate Judge